With the lawyers who are going to argue the case, please approach the bench and introduce yourself to the court. Good morning, your honors. Leslie Rosen on behalf of the plaintiffs. Good morning, your honors. Irina Dmitrieva on behalf of the Chicago Transit Authority. And the appellant, you're going to have some time for rebuttal? Oh, yes. How much? Five. Okay, because we're going to have to strictly construe the time. It's not a difficult case. Okay, let's proceed. Okay. May it please the court. I know you understand this case we're here on. Yeah, let me ask you a question right off the bat. Good. What should this driver have done when this man is there, appeared to be drunk? It's in the brief. He should have done what's reasonable. You don't leave a man who's impaired leaving him on the bus and not doing anything. Well, he called 911, counsel. We don't know. Yes, you do. We know from what. We know he called eventually. He got off the bus. Eventually. We're talking about less than 45 minutes from the time he got on the bus until 911 arrived. No. No. What are we talking about? He got on the bus at 2.52, and I said less than 45 minutes. He called at like 3.50, it looks like. The police report says he called at 3.50. But he's walking around, talking to the other passengers. He passed out. Where are we getting? Yeah, at the end, he fell asleep on the benches, but at what point is he under a duty? He's got the highest degree of care, and at the point he's at the duty is when he gets off the bus. Please don't point at me, counsel. Please do not point at me. Oh, I'm so sorry. He is at the point where he has a duty. He has the highest degree of care, and he has a duty to do something reasonable. When he gets to the end of the route, he sees that the guy – we allege that he sees that the man is drunk and unable to take care of himself, not just intoxicated, but we allege that he's unable to take care of himself. And then he gets to the end of the bus, and you said just that he was asleep. Perhaps he was asleep. Perhaps he was unconscious. It's unknown. And at that point, there's a question of fact as to whether he just walked away from the bus without trying to rouse the man and whether he acted reasonably under those circumstances. That's the point. I mean, I don't expect that the bus driver would have known that when he was lying there on the seat that somebody pickpocketed him and took his phone. He shouldn't have known that. But he certainly knew that the man was intoxicated. It took eight minutes before, according to the timeline that we have, from the time he got on the bus at 2.52 until the time when he accepted him as a passenger at 3 o'clock. And during that time, he was staggering, and he was obviously intoxicated. He took a – after taking a swig, he threw the bottle out the front door, and then he passed out. And when he gets – you can't – he can't just leave the guy sitting on the bus and walk away. But you still haven't answered my question. What should he have done? He should have immediately called the comptroller according to – according to the CTA's rulebook. And the comptroller should have called the police. And we don't know how much time elapsed. The time that elapsed – And the police are going to come for a drunk on the CTA bus. Maybe – well, does it matter if he's drunk or if he's had a heart attack? He's not been able to rouse him. Why? But he was drunk. They knew he was drunk. You can't leave a man sitting on the bus, passed out, not moving. You can't just walk away. You know, if you – And when did the duty arise? As soon as the drunk man came – according to you, as soon as he came onto the bus and they saw that he was impaired? Not as soon as they saw he was drunk, but as soon as they could tell that he was unable to care for himself. So, in this case, at the very latest, the duty arose when – to do something when he didn't get off the bus at the end. Because I don't think that the bus driver can be driving the bus and looking back and seeing that the guy is passed out and he's being pickpocketed. Okay, that's not fair. But it's fair at the end of the – at the end of the route, when he doesn't get off. What if he had a heart attack? How does – you know, you can't just leave somebody there. If I see you trip on the street and fall down, I have no duty to stop and say, oh, Justice Burke, can I help you? I don't have to do anything. But if you're on my bus, if I'm a bus driver and I see that you're drunk and unable to take care of yourself, I'm a common carrier. I have the highest degree of care to you. That's been established. There shouldn't be a question about duty here. The only question is, is it reasonable? And that should be a fact question. And in this case, with the use of the video, the child court acted like a jury of one and said, no, no, you don't have it. I don't think that's right. Okay, well, let me ask you this. In all of the United States, just about every state has buses who are common carriers. Do you know of any case that says that there is a duty when you have a drunk to play nursemaid to him? Do you know of any case that says that? I'm not saying there's a duty to play nursemaid, but there is a case. That's what, you're going to stop the bus and he's going to check on this guy every 15 minutes? Is that what he should do? No, I didn't say that. For the half hour? I'll go with, first of all, in a case like this where there's plenty of Illinois cases, I did not even look outside of the state of Illinois. I know Your Honor is very good at doing that, and you just did that in another case that was. I do it in all cases. Okay. Okay. But I didn't do that here. I can tell you that there is no case anywhere that would allow a duty under these circumstances. Oh, what about Salty v. YMCA? Yeah, what are the facts of that case? What are the facts of that case? I can't tell you off the top of my head. It has nothing to do with here. There is nothing to do with what happened here when a drunk is on there. There's no notice or knowledge that this man was in any distress. That's a fact question. This is not notice. Notice is typically a fact question, and it is in this case. And I think that you can't confuse foreseeability that is a component of duty analysis with foreseeability that is a component of proximate cause. I think Salty, we've got an IPI directly on point. We have 314 of the restatement that applies here. We've got the CTA's own manual that imposes a duty here. We're not just saying because he's drunk. The manual does not create a duty. There's no case law that says that. The duty is created under the law. The duty would be created if there would be notice and knowledge. In other words, if the fellow would scream out, I'm having a heart attack or I've got chest pains or I've got something, something to give the bus driver notice and knowledge that there should be something done. I think there was notice. First of all, we're at a motion to dismiss, not a motion for summary judgment. Notice is typically the response to this motion for summary judgment. Was there anything of that nature? It wasn't a summary judgment. We've never deposed the bus driver. This was a motion to dismiss. A motion to dismiss is almost like the same thing here under these circumstances. There's no deposition. I understand that. There's no audio. And there's a 314A states, a common carrier is under a duty to its passengers to take reasonable action to protect them against unreasonable risk of physical harm. Well, that's true, but where did he have this knowledge? I mean, where did he get it? Where did he get it? There didn't seem to be any facts here that showed that. Well, from the video alone. I don't think they should be looking at videos myself. But if you look at the video. We did, and there's nothing there. But the video, when a guy comes back, it's eight minutes past, and then he pays the fare, then he throws the bottle out. I ride the CTA every day. People are crazy on the bus, yes, but he's throwing a bottle out the front door. That's not a question of facts. So is throwing a bottle out the door of the bus triggers a duty on the part of the bus driver? Is that your position? No, the duty is triggered. When he's unresponsive. When the driver knows he's unresponsive. At all times, the driver is under the highest degree of care. This isn't just basic negligence. But he's not an insurer. No, no. He's under the highest degree of care, but in order to have that care, all of the case law says he has to have notice of knowledge. Notice. Something's wrong. There's nothing to show that here in the video. We say, I think there's notice not only from throwing the bottle out, but if you ignore that. As I said to Justice Burke earlier, when the guy doesn't get off the bus at the end of the route, and the driver doesn't even try to rouse him or say, hey, buddy, get off the route. He did, counsel. At 3.37 a.m., he parked at the terminal. He immediately is calling, and then an ambulance responds. So we can assume he called 911 at that point within 52 seconds. So even if we were to assume that you are correct and there is some kind of duty for him to assure the safety of this drunk passenger, within 52 seconds, that's somehow negligent? No. No, that wouldn't be. But that's a fact question. But the police report says the call came in at 3.50, not at 3.37. Okay. So that's a big difference. That's 12 minutes, isn't it? Between 3.37 and 3.50 is 13 minutes. You don't, there's no audio. You don't know what he did. I mean, you don't know. That's a fact question. Let a jury decide that. Well, the police arrived at 3.53. The police report says they were called at 3.50. And I'm looking, and the two police vehicles arrived at the bus at 3.53. Okay. So within three minutes, do you think that they get the call and then they're there? I am saying there's evidence of that. I'm not deciding the facts. I'm saying the driver says, well, the CTA is now saying he called. You don't know he called. All you know is that the police arrived. He gets there at 3.37. There seems to be a phone call. You don't know what it is. Why didn't he supply an affidavit to say I called? Then we would have deposed him, and then we would have a better fact pattern. Why didn't they depose him to begin with when the motion was filed? Why didn't they ask to depose him? I mean, that's good lawyering. You depose him and see if you can get something. Because it was a motion to dismiss. No, it wasn't. Because it was a motion to dismiss that summary judgment. I know, but it comes out like the same thing. You could call it a horse and pig. It's still a horse. It's the same thing. It's the same rules. Not exactly. Actually, last night when I was looking at Anderson v. CTA, it referred me to Doe v. University of Chicago, and that case does give a differentiation between summary judgment. There is a slight differentiation. Pardon me? It's a slight. Slight. It's slight. Very slight. But we didn't have – I mean, the question is, was there a duty? It's all alleged, and it's there. The problem is you've got to show a duty, and that's what's missing in this case. Based on a video, based on a video that the trial court can sit as a jury of one and say, eh, it's not here, not here, even though the police report says the call didn't come in until 3.50. I don't know. I think you're confusing foreseeability here. Notice is a fact question. I think it's a fact question in this case. And I don't think that when you have the highest degree of care and you've got a duty that's alleged, you know, that we've accepted under the statute. Okay. When you're ready, pass your time. You want to have a few minutes? I'm done. Thanks. Now, what do you have to add? Anything? If you want to ask specific questions, I would like to draw this court's attention to page six of the plaintiff's report. And on page six, the plaintiff states, plaintiff agrees that the passenger's intoxication by itself is insufficient to put a common carrier on notice that the passenger poses an unreasonable risk of physical harm to himself or others. And that's an important concession in this case, because apart from Mr. Daniels having been drinking or, you know, intoxication, there are no specific facts well-plaid in this case or shown by any type of evidence that would have put anyone, including the bus driver, on notice that Mr. Daniel was in any way endangered or was ill or injured. And counsel is incorrect that the standard on a dismissal motion under section 2619 is almost like 2615. It is not. This court has held on a number of occasions, explained on a number of occasions, that a standard under 2619 is very similar to a standard under summary judgment. The defendant is allowed to bring in extraneous evidence supported by an affidavit, and the CTA absolutely submitted an affidavit. It's at record C-474, verifying that images on the CD are a true and accurate depiction of what transpired in the vicinity of the bus on March 3, 2018. The bus video is in the same condition as when the hard drive was pulled from the bus. So this is competent evidence that would have been admissible on summary judgment in the trial. And at no point, at no point in this case in the trial court, plaintiff has questioned the veracity or the authenticity of the video. And in response to the dismissal motion under 2619, it was incumbent upon the plaintiff to come forward with more than factual conclusions. He had to come forward with some allegations of specific fact, preferably supported by affidavit, to rebut the evidence submitted by the CTA. He did not. And so the entire dispute about how many minutes or when the call was made, it's not really dispute. There is no dispute in the record when the call was placed. The record, the video is clear that there was only one call placed after the bus stopped. And that call was placed two minutes after the bus stopped and the bus operator exited the bus. The minutes, 11 minutes that the plaintiff references are 13 minutes, there is absolutely no support in the record for it. It comes from the unverified police report. Police reports usually are inadmissible evidence. But even if, you know, we look at the police report here, it does not talk about the time when a bus operator called dispatcher. The 350, you know, number, that's the number when the CTA dispatcher called 911. And presumably the bus operator called the CTA dispatcher before that call was placed. Indeed, the plaintiff's counsel below acknowledged that this time stamp on the police report appeared to be inaccurate because the time when police arrived on the scene was off by 1 minute and 40 seconds. So plaintiff's trial counsel below subtracted 1 minute 40 seconds from all time stamps in the police report. And so there's absolutely no basis for the plaintiff's speculation that the call was made 11 or 13 minutes later. So apart from the conclusion allegations in the complaint, there's absolutely nothing in the record that would show any type of symptom or sign that Mr. Daniel was experiencing a medical emergency so that paramedics and not just police had to be summoned right away. The video clearly shows that Daniel was not in a sick or helpless condition when he boarded the bus in the middle of the night at 3 a.m. He is seen walking, talking to fellow passengers, pouring alcohol in another passenger's cup, throwing away the bottle, checking his cell phone, going back to his seat. And plaintiff argues that somehow drinking on a bus, pouring alcohol in another passenger's cup, throwing away the bottle, these are examples of unusual behavior. And while, you know, we can argue whether it's socially unacceptable, these are clearly not signs of a medical emergency. Even though it may be socially unacceptable to drink alcohol on a bus, there is nothing medically unusual about it. These are not signs of a person in medical distress experiencing, you know, heart attack. In fact, there is nothing on that video that would put anyone on notice that Mr. Daniel was unstable. He didn't fall to the floor. He didn't vomit. There is absolutely nothing unusual about this behavior. And if we watch the tape closely, there were at least a dozen people who walked in close proximity to Mr. Daniel and they didn't give a second thought. They were not alarmed at all by his condition. Now, plaintiff seems to concede that during the time that the bus was moving, there was no duty to continuously monitor Mr. Daniel, even if the bus driver knew that he had been drinking. And that's what the court in Anderson actually held. So the case boils down to what happened at the end of the bus route when Daniel failed to exit the bus. We do not need the audio to know that the bus driver amplified his voice with his hand. And he literally, you know, makes this motion with his hands at the last stop, amplifying and shows with his hand, directing passengers to go. He stays longer than usual. There is amplification of the voice directing passengers to leave the bus. And so that's exactly what the CTA rulebook required the bus driver to do, to attempt to arouse passengers. It doesn't mean to physically arouse. It could be also verbally, and that's exactly what the bus driver did. Again, just because Daniel didn't exit the bus at this point, it doesn't mean there was anything unusual about it. We cited a case from over 100 years ago in our brief from 1908, Dabney v. Baltimore and Ohio Southern Railroad, in which the Illinois appellate court noted that an intoxicated passenger knew and stated his destination, paid his fare, was carried beyond his station while asleep, and not unusual occurrence. So throughout, you know, all this time, it's not an unusual occurrence for someone to fall asleep on a bus in the middle of the night and be carried beyond his destination. As it happens, the CTA discouraged bus operators to physically touch, you know, passengers. The CTA is not the only one in this rule. Other common carriers have the same rule, for instance, in the case of Plenty of Sides Roads, the Illinois Central Gulf Railroad. In the Statement of Facts, there is a statement that conductor or collector should report the matter but should not try to awake or arouse the person due to the possibility of being injured or robbed. So it's very common for common carriers to have this rule for the bus operators of train or buses not to touch people physically. And this is, in fact, what would be the ultimate consequence of what Plenty of Sides is asking this court to do. Because the whole point of the Plenty of Sides argument is that what bus driver should have done, he should have come to physically arouse Mr. Daniel. And that would be a drastic change in the way that mass transit agencies operate, the internal rules that are for operator's safety. And so there is absolutely no reason to impose that legal duty in this case. If your owners have any further questions. Thank you. Thank you. Okay. We'll give you two minutes rebuttal. Okay. Just four points. One, going back to notice, my co-counsel reminds me that the driver told the police he last saw Mr. Daniel awake 30 minutes ago. So he did have notice that he wasn't even awake. So now they changed it to the call was made two minutes after the stop. There's still a dispute effect as to whether they did that. Presumably, counsel says the driver called the dispatcher. That's presumably. I don't think we can do that as a matter of law. I'm not saying that the driver had a duty to go back and physically arouse the man, touch him. But you cannot say as a matter of law that you don't need audio to know that the driver amplified his voice to tell the people to get off the bus because his hand was raised. He could have been saying, thank God I'm done with work today. We don't know what he said. So I do think it's unfair to say as a matter of law that it's not unusual for people not to exit the bus at the end of a route. And that's what the council's asking you to say. And that's it. Thank you. Thank you for giving us an interesting case. And we'll have a decision for you shortly. Take the case under advisement at this point. Okay. Call the next case.